# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KATRINA L. WEBSTER,

       *Plaintiff*,

  v.

RICHARD V. SPENCER,[1] Secretary of the Navy,

       *Defendant*.

No. 17-cv-1472 (DLF)

## MEMORANDUM OPINION

Katrina L. Webster, acting pro se, brings these Title VII and Age Discrimination in Employment Act claims against Richard V. Spencer in his official capacity as the Secretary of the Navy.[2]  She alleges that while working for the Navy she experienced retaliation, discrimination, and a hostile work environment.  Before the Court are the Navy's Motion to Dismiss and for Summary Judgment, Dkt. 66, and Webster's Cross-Motion for Summary Judgment, Dkt. 71.  For the following reasons, the Court will grant in part and deny in part the Navy's motion and deny Webster's cross-motion.

## I.    BACKGROUND

Webster is a longtime Navy employee.  She started there in 1998, as a GS-0318-05 secretary in the Technical Division of the Navy's Strategic Systems Programs.  Def.'s Statement

---

[1] When this suit began, Sean Stackley was the Secretary of the Navy.  When Richard Spencer became the Secretary, he was substituted automatically as the proper the defendant.  *See* Fed. R. Civ. P. 25(d).

[2] Though the Department of the Navy is not formally a defendant in this case, the Court will refer to the Secretary of the Navy as "the Navy".

of Undisputed Material Facts ("Def.'s Facts") ¶ 1, Dkt. 66.[3]  In 2000, the Navy promoted her to

a GS-0318-06 secretary, and she remains in that position today.  *Id.* ¶ 2.  She identifies as

"African-American" and "female."  Am. Compl. ¶ 8, Dkt. 47-1.

### A.    Webster's Claims

Webster alleges that since 2003 multiple Navy employees "have colluded. . . to deny her

promotions, bonuses[,] and awards."  *Id.*  ¶ 15.  Their goal: to cause "enough financial hardship"

for Webster and her husband that the Navy would "revoke their security clearances."  *Id.* ¶ 11.

Their motive: to retaliate against Webster for an Equal Employment Opportunity (EEO)

complaint that she and her husband had filed in March 2002.  *Id.*  She contends that in seeking

these ends the colluders created a hostile work environment and committed numerous instances

of retaliation and race-, sex-, and age-based discrimination.  *See id.* ¶ 16.  She raised these

allegations in seven Navy EEO complaints, and her amended complaint incorporates and focuses

on these complaints and allegations.  *See id.*

The first two EEO complaints cover activity from December 23, 2008 to March 25,

2010.[4]  As explained in Part III below, the Court will dismiss the claims associated with these

complaints for Webster's failure to timely exhaust administrative remedies and failure to timely

file suit.  The Court thus need not recount those claims here.

---

[3] The Court cites to the parties' statements of facts for information that is not genuinely disputed.
Any disputes are either not genuine or immaterial.

[4] These are Navy EEO complaint numbers: 09-00030-00674, *see* Def.'s Ex. 2, Dkt. 65-3; and
10-00030-00266, *see* Def.'s Ex. 7, Dkt. 65-8.

The remaining EEO complaints that fuel Webster's suit allege a potpourri of employment actions to support her claims.[5]  Given the discrete nature of each action, the Court organizes them by category, not chronology.  The undisputed material facts of each action follow.

*Performance reviews.*  Webster alleges that she "was denied favorable performance reviews to deny her salary increases, bonuses, [and] awards."  Am. Compl. ¶ 347; *see also id.* ¶ 307; *id.* ¶ 326.  In particular, Webster considers certain narratives to be "negative and demeaning" and argues that she deserved higher ratings.  Pl.'s Statement of Material Facts as to Which There is No Genuine Issue ("Pl.'s Facts") at 4, Dkt. 70-1.

- In the 2010 annual review, Captain Michael Gill, documented Webster's successes and areas for improvement.  *See* Def.'s Ex. 34 at 16–18, Dkt. 65-35.  Gill rated her "acceptable" in all critical areas.  *Id.* at 21.

- In the 2011 annual review, Gill again documented Webster's strengths and weakness.  He wrote that Webster "can complete tasks when given the proper supervision and guidance but still needs to improve in the areas of paying attention to detail and operating independently."  Def.'s Ex. 35 at 14.  He added that she "processes letters and memos within [two] days but they need to be checked closely by a supervisor for errors.  As a result, [she] has only been assigned basic clerical tasks in the Branch.  We have been working . . . to help her improve in this area."  *Id.*  Gill ultimately rated Webster "acceptable" under a pass-fail rating system.  Def.'s Facts ¶ 77.

- In a 2012 "close-out" review covering part of fiscal year 2012, which Gill prepared before his April 2012 retirement, Gill similarly noted where Webster excelled and where she still could improve.  *See* Def.'s Ex. 26 at 14–16.  He rated her "acceptable" in all critical areas.  Def.'s Facts ¶ 82.

- In a 2014 mid-year review, Captain Douglas Williams mistakenly listed Webster's career stage rating as "entry" rather than "expert."  Def.'s Ex. 37 at 10–11.  Once he learned about the mistake, he changed the rating to expert.  *Id.*  Williams gave Webster a "glowing" rating.  Def.'s Facts ¶ 100.

---

[5] These are Navy EEO complaint numbers: 11-00030-02576, *see* Def.'s Ex. 10, Dkt. 65-11; 12-00030-00282, *see* Def.'s Ex. 12, Dkt. 65-13; 12-00030-03671, *see* Def.'s Ex. 18, Dkt. 65-19; 13-00030-03295, *see* Def.'s Ex. 18; 15-00030-01985, *see* Def.'s Ex. 22, Dkt. 65-23; and 15-00030-03003, *see* Def.'s Ex. 25, Dkt. 65-26.

- For the 2015 annual review, Commander Patrick Croley gave Webster a rating of 40.  Def.'s Facts ¶ 105.  Based on Webster's expected performance range of 37 to 44, this represented an average rating.  Pl.'s Facts at 12.

*Bonus decisions.*  Webster alleges that she was denied "bonuses and awards consistent with other [similarly situated] members of her branch."  Am. Compl. ¶ 307; *see also id.* ¶ 325; *id.* ¶ 346.  She appears to challenge the following bonus decisions:

- For 2010, Gill gave Webster a reward recommendation of "1.33."  Def.'s Facts ¶ 63.  The predetermined year-end bonus payout for a 1.33 rating was $243, which Webster received.  *Id.* ¶¶ 64–65.

- In 2011, "[a] few individuals received on-the-spot awards . . . for special acts or special outstanding performance."  *Id.* ¶ 80.  Though Webster "believed she deserved" such an award, *id.* ¶ 78, she did not receive one, Pl.'s Facts at 7.

- For 2015, Webster received a $403 bonus, Def.'s Facts ¶ 110, which was lower than the $750 bonus she received in 2014, Pl.'s Facts at 13.  A "standard formula that took into account the employee's [performance] score and salary" determined this amount.  Def.'s Facts ¶ 111.

*Letter of requirement.*  On March 12, 2010, Gill placed Webster on a "letter of requirement" after determining that Webster "maintain[ed] an unacceptable leave pattern" and did "not follow appropriate [leave] request procedures."  Def.'s Ex. 32 at 63.  The letter required that Webster follow specific procedures for requesting and documenting leave "due to [her] unacceptable time and attendance record."  *Id.*  Webster cites the letter of requirement as "direct evidence" of "retaliation, harassment, and hostile work environment."  Am. Compl. ¶ 114.

*Leave request.*  Webster alleges that the Navy "[c]onsistently denied [her] requests for leave."  Am. Compl. ¶ 320.  Webster alleged some of those denials in the two EEO complaints that the Court will dismiss in Part III.A below, so the Court does not recount them here.  But there is one alleged denial that survives the motion to dismiss.  In early May 2011, Webster submitted a leave request to Gill, her immediate supervisor.  Def.'s Facts ¶ 69.  She asked for three total hours of leave to take her son to two upcoming appointments.  *Id.* ¶ 69–70; Def.'s Ex.

4

34 at 91.   Webster asserts that Gill denied this initial request, Pl.'s Opp. at 10–11, Dkt. 70, while

the Navy says he "merely requested more information," Def.'s Reply at 12, Dkt. 72.   No matter

who is correct, Gill approved a modified leave request after "she had submitted what he wanted

to approve."  Pl.'s Opp. 11–12.

*Letter of reprimand.*   While Webster was waiting for Gill ultimately to approve her May

leave request, she emailed Webster's superior, Captain Steven Lewia, asking him to approve the

leave request and claiming that Gill had denied it.   Def.'s Facts ¶ 72.

A similar thing had happened before.   In March 2011, Webster bypassed Gill to request

leave and training approval from Lewia and Rear Admiral Terry Benedict.   Def.'s Ex. 34 at 41.

This incident caused Gill to issue a "letter of direction" to Webster.   *Id.*   It reiterated that

leave-approval authority rested with Gill alone and directed Webster to follow the chain of

command for future requests.   *Id.*

When Webster bypassed Gill again over the May leave request, Gill issued her a "letter

of reprimand" for violating the letter of direction.   Def.'s Facts ¶¶ 75–76.   Like the letter of

requirement, Webster considers the letter of reprimand to be "direct evidence" of "retaliation,

harassment, and hostile work environment."   Am. Compl. ¶ 114.

*Security clearance issue.*   In 2013, Lieutenant Commander Travis Plummer generated a

report from the Joint Personnel Adjudication System (JPAS), which stores security clearance

information.   Def.'s Facts ¶ 87.   The report revealed that the JPAS entries for Webster and 12

other Strategic Systems Programs employees showed no current security access.   *Id.* ¶ 88.

Plummer was unable to fix the error for Webster and one other employee.   *Id.* ¶ 89.

The Navy could not grant Webster or the other employee the "secret" access that their

jobs required without a JPAS entry showing a current security clearance.   *Id.* ¶¶ 90–91.   So the

Navy placed Webster and the other employee on paid leave until it could fix the JPAS errors.  *Id.*
¶ 91.  Webster was on paid leave status for about six weeks.  *Id.* ¶ 92.  Her security clearance
was never revoked, and she was paid while on leave.  *Id.* ¶ 93–94.  When Commander Doug
Williams placed Webster on leave, he did not know about her past EEO activity.  *Id.* ¶ 96.  The
same was true of Plummer.  *Id.* ¶ 96.

Webster admits that "Plummer was just doing his job."  Pl.'s Opp. 33.  She contends that
other "officials colluded to remove [her] security access from JPAS" to justify searching her
credit history for "credit issues that [they] could use to revoke [her] security clearance."  *Id.* 32.

*Promotion opportunities.*  Webster alleges that the Navy denied her certain promotion
opportunities.  Am. Compl. ¶ 15.  Two alleged opportunities survive the Navy's motion to
dismiss.  The first opening was for a GS-0318-08 secretary position; it opened after the
incumbent, a white female, retired.  Def.'s Facts ¶ 97; Am. Compl. ¶ 179.  The Navy did not
advertise this position as a government vacancy and did not fill it with a government employee.
Def.'s Facts ¶ 98.  It hired a contractor who identified as an African-American female.  *Id.* ¶ 97.

Webster does not appear to allege that she ever applied for this position.  *See* Am. Compl.
¶¶ 179–182.  Her complaint is that "the position was not announced" and that Navy officials did
not want her to apply.  Pl.'s Opp. 34.  She believes that the Navy filled the position
"non-competitively" and that she "should have been given the opportunity to be promoted."  *Id.*

The second opening was for a management analyst position in Strategic Systems
Programs.  Def.'s Facts ¶ 115; *id.* ¶ 126.  Webster did apply for this position and completed the
occupational questionnaire.  *Id.*  Each answer on the occupational questionnaire received a
predetermined, standard numerical rating, depending on the candidate's answer.  *Id.*  ¶ 120.  A
software system calculated the candidate's overall rating based on those answers.  *Id.*  To be

considered eligible for this position, a candidate had to score 90 or higher on the occupational questionnaire.  *Id.* ¶ 122.

A human resources specialist based in the state of Washington named Judith Stout handled the initial screening.  *Id.* ¶ 116.  Stout did not know Webster, did not have a working relationship with her, did not know Webster's race, age, or sex, and was unaware that Webster had engaged in past EEO activity.  *Id.* ¶ 129.  Stout's job was to review each applicant's resume and occupational questionnaire and then to assemble a list of eligible candidates.  *Id.* ¶¶ 116–117.  Based on Webster's self-reported answers to the questionnaire, she received a rating of 86. *Id.* ¶ 124.  This placed Webster below the 90-point cutoff, so Stout did not include Webster on the list of eligible candidates that she sent to Strategic Systems Programs.  *Id.* ¶¶ 125–126.  From the list of eligible candidates, Strategy Systems Programs ultimately selected Michael Mendoza for the position.  *Id.* ¶ 127.

### B.   Procedural History

Webster filed this action on July 25, 2017.  *See* Dkt. 1.  The Court had resolved a motion to dismiss Webster's original complaint, *see* Dkt. 19, and the parties were in discovery when Webster moved to amend her complaint on April 17, 2019, *see* Dkt. 47.  The Court granted in part and denied in part that motion on June 12, 2019.  *See* Dkt. 56.  The amended complaint asserts claims under Title VII (Counts I–III), *id.* ¶¶ 304–359, and the Age Discrimination in Employment Act (Count IV), *id.* ¶¶ 360–378, of a hostile work environment and discrimination based on race, gender, age, and retaliation.

On October 7, 2019, the Navy moved to dismiss certain claims, moved for judgment on the pleadings for certain claims,[6] and moved for summary judgment on all claims.  On December 2, 2019, Webster cross-moved for summary judgment.  These motions are now ripe.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

The Navy moves to dismiss the claims associated with EEO complaint no. 09-00030-00674 for failure to timely exhaust administrative remedies and EEO complaint no. 10-00030-00266 for failure to timely file suit.  *See* Def.'s Mem. in Support of Mot. for Summ. J. ("Def.'s Br.") at 28–29, Dkt. 67.  The Navy moves under Rule 12(b)(1), which policies jurisdictional deficiencies.  *See id.* at 1.  But the Navy's arguments raise only procedural deficiencies and thus properly proceed under Rule 12(b)(6).  *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (holding that Title VII's charge-filing provisions are mandatory procedural requirements, not jurisdictional requirements); *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011) (noting "that failure to exhaust administrative remedies is not jurisdictional under current precedents"); *Gordon*, 675 F.2d at 360 (holding that Rule 12(b)(6) applies to assertions of untimely Title VII suits); *Porter v. Sebelius*, 944 F. Supp. 2d 65, 68 (D.D.C. 2013) (holding that exhausting administrative remedies and timely filing suit under Title VII "are not jurisdictional" requirements).

The Federal Rules of Civil Procedure permit the Court to consider the Navy's motion to dismiss under Rule 12(b)(6), as the rules follow the "guiding principle" of "[f]airness, not

---

[6] The Court must treat the Navy's motion for judgment on the pleadings as one for summary judgment because "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d).  Both sides have had "a reasonable opportunity to present all the material that is pertinent to the motion," given that both have moved for summary judgment.  *Id.*

excessive technicality." *Gordon*, 675 F.2d at 360.  And here, because "the parties do not disagree about the facts" underlying these procedural requirements "but rather about purely legal issues, which have been fully briefed," the parties "will not be prejudiced by the Court's consideration of [the Navy's] motion pursuant to the standards of Rule 12(b)(6)." *Kamen v. Int'l Bhd. of Elec. Workers (IBEW) AFL-CIO*, 505 F. Supp. 2d 66, 71 n.1 (D.D.C. 2007).  The Court will construe the Navy's Rule 12(b)(1) motion as a Rule 12(b)(6) motion.

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.  Well-pleaded factual allegations are "entitled to [an] assumption of truth," *Iqbal*, 556 U.S. at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  A Rule 12(b)(6) dismissal for failure to state a claim— including for failure to exhaust administrative remedies—"is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  As relevant here, a court may consider a plaintiff's EEO documents for assessing exhaustion and timeliness attacks, particularly when—as is true in this case—neither side disputes their authenticity. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)

(considering "the pleadings and undisputed documents in the record" while reaching the merits on a motion to dismiss); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 11 (D.D.C. 2016) (taking judicial notice of informal and formal administrative complaints on a motion to dismiss); *Williams v. Chu*, 641 F. Supp. 2d 31, 35 (D.D.C. 2009) ("A plaintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice." (quotation marks and alteration omitted)).

### B.     Summary Judgment

Under Rule 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

But a party "opposing summary judgment" must "substantiate [its allegations] with evidence" that "a reasonable jury could credit in support of each essential element of [its] claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.    **ANALYSIS**

A.      **Motion to Dismiss**

The Court will dismiss Webster's claims associated with Navy EEO complaint numbers 09-00030-00674 and 10-00030-0026.

As to complaint number 09-00030-00674, Webster failed to timely exhaust her administrative remedies. "Title VII complainants must timely exhaust their administrative remedies before bringing their claims to court." *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (internal quotation marks and alterations omitted); *see also* 42 U.S.C. § 2000e-16(c). The exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision," *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks and alteration omitted), and it "ensure[s] that the federal courts are burdened only when reasonably necessary," *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). In the Title VII context, failure to exhaust is an affirmative defense, and thus "the defendant bears the burden of pleading and proving it." *Bowden*, 106 F.3d at 437; *see also Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) ("[A]n affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint.").

On March 26, 2013, the Navy rejected complaint no. 09-00030-000674 and warned Webster that she had 30 days to appeal the decision to the EEOC. Def.'s Ex. 3 at 1–2. But Webster did not appeal to the EEOC until more than two years later, on October 10, 2015. Def.'s Ex. 4 at 1. The EEOC unsurprisingly dismissed that appeal as untimely. *Id.* at 1–2. The Court similarly concludes that by failing to timely appeal the Navy's decision to the EEOC, Webster failed to exhaust her administrative remedies.

As to complaint number 10-00030-00266, Webster failed to heed Title VII's requirement "that plaintiffs file suit within 90 days of receiving notice from the EEOC of their right to sue." *Gordon*, 675 F.2d at 359; *see also* 42 U.S.C. § 2000e-5(f)(1).  On May 3, 2012, the EEOC granted summary judgment for the Navy on this complaint.  Def.'s Ex. 7 at 1, 8.  On July 16, 2012, the EEOC affirmed that judgment and told Webster that she had 90 days either to request reconsideration or to file a complaint in federal court.  Def.'s Ex. 8 at 1, 4.  The record contains no evidence that Webster requested reconsideration with the EEOC, and she did not file this suit until July 25, 2017—nearly five years after the EEOC gave Webster the green light to sue.  Thus, Webster failed to bring these claims to federal court on time.

Webster does not dispute this procedural history for either complaint.  *See* Pl.'s Opp. at 1. She maintains instead that the "continuing violation" doctrine excuses her tardiness.  *Id.*  This "muddled" doctrine is one of several "exceptions to, and glosses on," the "general rule" that a "claim normally accrues when the factual and legal prerequisites for filing suit are in place." *Earle v. District of Columbia*, 707 F.3d 299, 306 (D.C. Cir. 2012).  It can apply to conduct that turned out to be illegal only after its cumulative impact revealed the illegality—e.g., the conduct that often forms hostile work environment claims.  *See id.*  It can apply also to conduct that violates a statutorily imposed "continuing violation to act or refrain from acting."  *Id.* at 307. But it does not apply to a "discrete unlawful act." *Id.* at 306.  And discrete acts are all that complaints 09-00030-00674 and 10-00030-00266 allege.  *See* Def.'s Ex. 2; Def.'s Ex. 7.  These complaints do not allege hostile work environment claims or other similar claims, and they do not allege that the Navy violated a continuing obligation.  The continuing violation doctrine thus does not absolve Webster of her failure to exhaust administrative remedies or to timely file suit.

For these reasons, the Court will grant the Navy's motion to dismiss the claims arising under these two complaints.  The Court thus will also deny as moot the Navy's motion for summary judgment and Webster's cross-motion for summary judgment as to those claims.

**B.      Summary Judgment**

The Court will grant summary judgment for the Navy on Webster's remaining discrimination, retaliation, and hostile work environment claims.

*1.      Discrimination and Retaliation Claims*

Webster alleges that numerous incidents constituted some combination of unlawful discrimination and retaliation under Title VII and the Age Discrimination in Employment Act (ADEA). [7]  Title VII requires that any "personnel actions affecting employees. . . in executive agencies . . . be made free from any discrimination based on," among other characteristics, "race" or "sex."  42 U.S.C. § 2000e–16(a).  The ADEA requires that [a]ll personnel actions affecting employees . . . who are at least 40 years of age . . . in executive agencies . . . be made free from any discrimination based on age."  29 U.S.C. § 633a(a).

Webster "offers no direct evidence of discrimination" under either statute.  "[T]o survive summary judgment and earn the right to present her case to a jury, she must resort to the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*"  *Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006); *see Broderick v. Donaldson*, 437 F.3d 1226, 1231 (D.C. Cir. 2006) (explaining that the *McDonnell Douglas* framework applies to retaliation claims).

The *McDonnell Douglas* framework has three steps.  The employee first must make a prima facie case of discrimination or retaliation.  *See Iyoha v. Architect of the Capitol*, 927 F.3d

---

[7] Not every EEO claim involved race, sex, and age discrimination, or retaliation and Webster's complaint is not entirely precise on which actions related to which counts.  The Court will construe Webster's complaint broadly and analyze each incident for discrimination or retaliation.

561, 566 (D.C. Cir. 2019).  The "two essential elements of a discrimination claim" under Title

VII and the ADEA "are that (i) the plaintiff suffered an adverse employment action (ii) because

of the plaintiff's race, color, religion, sex, national origin, age, or disability."  *Baloch v.*

*Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  And "[t]o prove retaliation, the plaintiff

generally must establish that he or she suffered (i) a materially adverse action (ii) because he or

she had brought or threatened to bring a discrimination claim."  *Id.* at 1198.

If the plaintiff makes the prima facie showing, the employer must produce a "a legitimate

reason for the challenged action."  *Id.*  Four factors are "paramount" here: (1) whether the

employer's evidence would be admissible at trial; (2) whether "the factfinder, if it believed the

evidence, [would] reasonably be able to find that the employer's action was motivated by a

nondiscriminatory reason"; (3) whether the employer's justification is "facially credible"; and

(4) whether the employer's explanation is "clear," "reasonably specific," and "articulated with

some specificity."  *Figueroa v. Pompeo*, 923 F.3d 1078, 1087–88 (D.C. Cir. 2019) (internal

quotations omitted).

And if the employer carries this burden, the final and "central inquiry" is "whether the

plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted

non-discriminatory reason was not the actual reason and that the employer intentionally

discriminated against the plaintiff on a prohibited basis."  *Brady v. Office of Sergeant at Arms*,

520 F.3d 490, 494 (D.C. Cir. 2008).  The issue here "is not the correctness or desirability of the

reasons offered but whether the employer honestly believes in the reasons it offers."  *Fischbach*

*v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (alterations adopted and internal

quotation marks omitted).

Most often, if the employer carries its burden at step two, the district court "need not—and should not—decide whether the plaintiff actually made out a prima facie case." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  But if an employer contests whether the plaintiff suffered a sufficiently adverse action to sustain a discrimination or retaliation claim, it is appropriate to consider first whether the plaintiff has made a prima facie case.  *See Baloch*, 550 F.3d at 1197 (analyzing whether the employee suffered an adverse action despite the plaintiff's failure to rebut the employer's nondiscriminatory rationale).

Based on these standards, the Navy is entitled to summary judgment on Webster's discrimination and retaliation claims.  Some of the actions supporting Webster's claims do not satisfy the adverse action element of discrimination and retaliation claims.  And Webster fails to rebut the Navy's legitimate basis for the remaining actions.

### i.      Failure to Satisfy the Adverse Action Element

An employer's action is sufficiently adverse for a *discrimination* claim only if it causes "a significant change in employment status"—e.g., "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011).  The action must cause the employee "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Id.* at 1248–49.  An employer's action is sufficiently adverse for a *retaliation* claim if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 1249 (internal quotation omitted).  Such actions "are not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* (internal quotation marks omitted).  Yet "while the scope of actions covered by Title VII's

substantive provision and its anti-retaliation provisions differ, the magnitude of harm that

plaintiff must suffer does not"—in both cases, the plaintiff must suffer "objectively tangible

harm." *Hornsby v. Watt*, 217 F. Supp. 3d 58, 66 (D.D.C. 2016).

The following actions do not meet even the more-forgiving definition used in the

retaliation context and thus are not adverse actions in either context.  The Navy is thus entitled to

summary judgment on these claims.

*Performance reviews.*  To be materially adverse, a performance appraisal "must affect the

employee's position, grade level, salary, or promotion opportunities." *Taylor v. Solis*, 571 F.3d

1313, 1321 (D.C. Cir. 2009) (internal quotation marks omitted).  An employee's "bare,

conclusory allegation" of financial harm will not do. *Id.*  Here, the challenged performance

appraisals all rated Webster as acceptable.  In addition, the narratives were hardly derogatory or

dismissive.  They included ordinary feedback and some guidance for improvement.  In fact, Gill

noted in several reviews that Webster was improving, and her 2014 review was "glowing."  Far

from demonstrating adverse action, these reviews instead seem to have operated as designed,

prompting Webster to make continued improvement over time.  Though Webster believes that

her reviews were unduly negative, she presents no concrete evidence that these fairly ordinary

reviews affected her position, grade level, salary, or promotion opportunities. *See Grimes*, 794

F.3d at 94.  The reviews were not adverse actions.

*Letter of requirement.*  The letter of requirement clearly was not an adverse action for

*discrimination* purposes.  It was not "a significant change in employment status" along the lines

of a hiring, firing, failure to promote, or reassignment. *Baird*, 662 F.3d at 1248.  Nor did it effect

a "significant change in benefits." *Id.*  All it did was require that she follow additional

procedural and documentation requirements when requesting leave.  It is a closer call whether

the letter of requirement was an adverse action for *retaliation* purposes.  But because the letter imposed procedural rather than substantive requirements, it would not have dissuaded a reasonable employee from making a discrimination charge.  *See id.* at 1249.  It thus was not an adverse action for retaliation purposes either.

*Leave Request.*  There is a dispute whether Gill denied Webster's May 5 request for three hours' leave or merely requested more information before granting it.  But there is no dispute that he ultimately granted Webster a modified request a short time later.  Gill's action—an initial denial (or request for more information) of a request for three hours of leave—is plainly not an adverse action either for discrimination purposes or retaliation purposes.

*Letter of reprimand.*  A letter of reprimand that "contained no abusive language" but instead included "job-related constructive criticism" that "can prompt an employee to improve her performance" does not satisfy the adverse action element—even for retaliation claims. *Baloch*, 550 F.3d 1199.  Gill's letter of reprimand was such a letter.  It contained no abusive language and instead explained what Webster need to do to improve her performance in the future.  *See* Def.'s Ex. 34 at 43.  On top of that, Gill had a sound and reasonable basis for issuing the letter, given that Webster had violated the letter of direction that Gill had issued just two months earlier.  *See id.* at 41.  The letter of reprimand was not an adverse action of any sort.

*Security clearance issue.*  Webster did not suffer an adverse action when the Navy placed her on six weeks of paid administrative leave while it resolved the security clearance issue.  Even a "19 month period of paid administrative while an investigation is ongoing . . . does not, by itself, constitute adverse action" for discrimination purposes.  *Jones v. Castro*, 168 F. Supp. 3d 169, 179 (D.D.C. 2016) (citing cases).  The same goes a retaliation claim: "placing an employee on paid administrative leave does not, in and of itself, constitute a materially adverse action for

purposes of a retaliation claim." *Hornsby*, 217 F. Supp. 3d at 66.  The employee must show "objectively tangible harm."  *Id.* at 67.

Webster shown no such harm.  First, she "continued to receive full pay and benefits."  *Id.* Second, if 19 months of paid leave is not an adverse action, *see Castro*, 168 F. Supp. 3d at 179, then six weeks surely "is not, in itself, so long as to have caused [Webster] any objectively tangible harm," *Hornsby*, 217 F. Supp. 3d at 67.  Third, Webster was ultimately reinstated.  *Cf. Hornsby*, 217 F. Supp. 3d at 67 (holding that even a failure to reinstate was not materially adverse when the plaintiff failed to allege that the failure was unreasonable).  Fourth and finally, Webster has shown no other evidence that she suffered "other harms result[ing] directly from the terms of [her] administrative leave."  *Id.*  For these reasons, the paid administrative leave was not an adverse action.

ii.      Failure to Rebut the Navy's Legitimate Rationales

Webster fails to rebut the Navy's legitimate, nondiscriminatory rationales for the remaining challenged actions—even assuming they are sufficiently adverse.  *See Iyoha*, 927 F.3d at 566.  The Navy is thus entitled to summary judgment on these claims.

*Bonus decisions.*  The Navy has established that it based Webster's bonus determinations on legitimate, nondiscriminatory rationales.  *Fischbach*, 86 F.3d at 1183.  Webster has not produced evidence to rebut the Navy's rationales.

For 2010, Webster received a $243 year-end bonus that she considers unjustified.  Def.'s Facts ¶¶ 63–69.  This was based on a predetermined formula that incorporated Gill's reward recommendation score.  *Id.*  Gill based this score in part on Webster's self-assessment, which was incomplete but noted her 12 years of experience, two college degrees, emails of commendation, and the duties that she accomplished.  *See* Def.'s Ex. 34 at 16.  He also evaluated the "critical elements" for Webster's position, determining that she could complete certain tasks

adequately but still required some supervision and had room for improvement.  *See id.* at 16–18.

Webster has not produced sufficient evidence to show that Gill based his reward

recommendation on anything but these legitimate, nondiscriminatory grounds.

In 2011, Webster received no on-the-spot awards for outstanding performance despite her

belief that she deserved one.  Def.'s Facts ¶ 78–80.  Webster did not highlight a special project or

act that she accomplished that would have merited such an award.  Def.'s Ex. 35 at 28–29.  And

Gill was unaware of any such accomplishments.  *Id.* at 39–40.  Webster has produced no

evidence to support that she should have received an on-the-spot award or that a decision not to

give her one was motived by illegitimate, discriminatory intent.

For 2015, Webster received a bonus of $403.  Def.'s Facts ¶ 110.  Her 2015 bonus was

based on Croley's review that concluded she was meeting expectations for her position and level

of compensation.  Def.'s Ex. 37 at 21.  Webster believes that her 2015 bonus should have been

higher, since Williams had given her a glowing review in 2014 and her 2014 bonus was for

$750.  Pl.'s Facts at 13.  But Webster supplies no evidence that Croley based his rating on

anything but the legitimate rationales given in her 2015 review.  In fact, two other secretaries in

Webster's division, neither of whom had participated in EEO activity, received equal or worse

ratings.  Def.'s Ex. 37 at 39–41.

*Promotion opportunities.*  A successful failure to hire claim requires, among other things,

that the employee "applied for and was qualified for an available position."  *Cones v. Shalala*,

199 F. 3d 512, 516 (D.C. Cir. 2000).  The Navy did not hire Webster for the GS-08 secretary

position for a simple reason: She didn't apply for it.  *See* Pl.'s Opp. at 34.  She "believes" that

she "should have been given the opportunity to be promoted" and that Navy officials "did not

want her to apply."  *Id.*  But even if those beliefs were relevant, Webster cites no evidence to

support them.  *See id.*  The position was not advertised as a government vacancy, *see* Def.'s Ex.

37 at 8, because the Navy was transitioning from using government employees to contractors to

fill secretarial positions as those positions became vacant, *see id.* at 26; *id.* at 237.  And the Navy

ultimately hired a contractor, not a government employee, to fill the position.  *Id.* at 7.

The Navy did not hire Webster for the management analyst position because she was not

qualified for it.  *See Cones*, 199 F. 3d at 516.  Webster's score on the self-reported occupational

questionnaire was too low for Webster to make the list of eligible candidates, and so she was not

among the candidates that her branch considered.  Def.'s Facts ¶¶ 125–126.  Webster believes

that Stout, the person in Washington state who assembled the list of eligible candidates,

"colluded" with hiring officials in Webster's branch to eliminate Webster from the list of eligible

candidates.  Pl.'s Opp. at 42.  Not only does Webster have no evidence to support this claim, she

also has none to rebut the Navy's evidence that her score of 86 was below the eligibility cutoff.

*See id.* at 42–44.

### 2.      Hostile Work Environment Claim

That leaves Webster's hostile work environment claim.  To establish a discriminatory or

retaliatory hostile work environment claim, "a plaintiff must show that his employer subjected

him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive

to alter the conditions of the victim's employment and create an abusive working environment.'"

*Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also*

*Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 79, 82–83 (D.D.C. 2013) (collecting cases establishing

that "the same legal standard" applies to discriminatory and retaliatory hostile work environment

claims).  Courts examine "the totality of the circumstances, including the frequency of the

discriminatory conduct, its severity, its offensiveness, and whether it interferes with an

employee's work performance." *Id.* Title VII is not a "general civility code"; the alleged

conduct "must be extreme to amount to a change in the terms and conditions of employment."

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted);

*see also Baloch*, 550 F.3d at 1201. And the alleged conditions must be both "objectively and

subjectively hostile, meaning that a reasonable person would find [the work environment] hostile

or abusive, and that the victim must subjectively perceive the environment to be abusive." *Hill*

*v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 237 (D.C. Cir. 2018) (alteration adopted and

internal quotation marks omitted).

Webster claims she faced a hostile work environment claim based on her race and in

retaliation for past EEO activity when: she received her 2010 performance appraisal; Gill issued

the March 2010 letter of requirement concerning her leave usage; Gill allegedly denied her May

5, 2011 leave request; Gill issued the June 2011 letter of reprimand for disobeying the chain of

command; she received her 2011 performance appraisal; she received her 2012 close-out

appraisal; and she was placed on paid administrative leave while the Navy investigated her

security clearance issue. *See* Def.'s Exs. 9, 11, 17.

None of these allegations, whether analyzed alone or together, are sufficiently severe or

pervasive to sustain a hostile work environment claim. First, the allegations span five years and

involve different supervisors. *See Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009)

(dismissing a hostile work environment claim, in part because "the alleged events [we]re

temporally diffuse, spread out over a four-year period, suggesting a lack of pervasiveness").

Second, they are not the "extreme conditions" that "constitute a hostile work

environment." *Hill*, 897 F.3d at 237. Webster's grievances instead are "ordinary tribulations of

the workplace." *Faragher*, 524 U.S. at 788. Webster's appraisals were acceptable; the

narratives were ordinary, not demeaning.  In fact, they "recommended areas of improvement—hardly the stuff of severe or pervasive workplace hostility."  *Brooks v. Grundmann*, 748 F.3d 1273, 1277 (D.C. Cir. 2014).  The letter of requirement was thoroughly justified, based on Webster's history of leave usage, and such restrictions are generally insufficient to sustain a hostile work environment claim.  *See Baloch*, 550 F.3d at 1195.  Even if Gill initially denied Webster's May 2011 leave request, all agree that he subsequently granted a modified one.  The letter of reprimand was sound given that Webster had again flouted the chain of command, squarely violating the earlier letter of direction.  And the Navy's well-justified decision to place Webster on paid leave while it resolved her security clearance issue was hardly abusive.  In short, these actions were all "far from severe" enough to support a hostile work environment claim.  *Brooks*, 748 F.3d at 1276.

Third and finally, Webster has failed to establish any evidentiary link between the alleged hostile behavior and either her race or her protected EEO activity.  Her fundamental premise is that as a longtime Navy employee with a college education, her career should not have stalled in neutral for nearly two decades.  *See* Pl.'s Reply at 4, Dkt. 73.  She believes that discrimination and relation must be to blame.  *See id.*  But no matter how sincere this belief is, summary judgment requires evidence.  On that requirement, Webster comes up short.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies as moot in part the Navy's Motion to Dismiss and for Summary Judgment, and the Court denies Webster's Cross-Motion for Summary Judgment.  A separate order accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

May 1, 2020